

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:

Opinion No. O-2118
Re: Authority of the
Governor to grant
deficiency appro-
priations to cer-
tain educational
institutions.

We acknowledge receipt of your letter of March 21, 1940, requesting an opinion whether or not you have authority to grant deficiency appropriations requested by three state colleges, the specific questions being as follows:

1. "The Sam Houston State Teachers College at Huntsville has requested the sum of Twenty-five Thousand ($25,000) Dollars to be used in replacing a dormitory which was destroyed by fire a few weeks ago."

2. "Southwest State College at San Marcos has requested a deficiency appropriation in the amount of Three Thousand Five Hundred Sixty-eight Dollars and Twenty-eight Cents ($3,568.28)," for the purpose of constructing a steam line to the auditorium-laboratory school building recently built by a PWA grant and loan

3. "The Sul Ross Teachers College at Alpine, Texas, requests the sum of Three Thousand ($3,000.00) Dollars to be used in repairing the roof of the library building at that institution."

4. A modified request by the Southwest State Teachers College for a deficiency warrant as follows:

Honorable W. Lee O'Daniel - Page 2

"* * * $3,565.28 to supplement Appropriation A-878, General Maintenance and Equipment, which has been exhausted. General Maintenance and Equipment is the only State Fund from which payment may be made of accounts for power, light, heat, plumbing and minor repairs on Power Plant. If this Deficiency Warrant is approved to supplement the General Maintenance and Equipment Appropriation, it will be expended in the same manner as the regularly appropriated General Maintenance and Equipment Fund was spent, being therefore only a supplement to the regular Appropriation A-878."

Article III, Section 49, of the Constitution provides:

"No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debts; and the debt created to supply deficiencies in the revenue shall never exceed in the aggregate at any one time two hundred thousand dollars."

Articles 4351 and 4351a, Revised Civil Statutes of Texas, 1925, as amended, provide for deficiency appropriations in the following language:

"All heads of departments, managers of State institutions or other persons intrusted with the power or duty of contracting for supplies, or in any manner pledging the credit of the State for any deficiency that may arise under their management or control, shall, at least thirty days before such deficiency shall occur, make out a sworn estimate of the amount necessary to cover such deficiency until the meeting of the next Legislature. Such estimate shall be immediately filed with the Governor, who shall thereupon carefully examine the same and approve or disapprove the same in whole or in part. When such deficiency claim, or any part thereof, has been so approved by the Governor

he shall indorse his approval thereon, designating the amount and items thereof approved and the items disapproved, and file same with the Comptroller; and the same shall be authority for the Comptroller to draw his deficiency warrant for so much thereof as may be approved; but no claim, or any part thereof, shall be allowed or warrants drawn therefor by the Comptroller, or paid by the Treasurer, unless such estimate has been so approved and filed. If there is a deficiency appropriation sufficient to meet such claims, then a warrant shall be drawn therefor and the same shall be paid; but, if there is no such appropriation, or if such appropriation be so exhausted that it is not sufficient to pay such deficiency claim, then a deficiency warrant shall issue therefor; and such claim shall remain unpaid until provision be made therefor at some session of the Legislature thereafter. The provisions of this article shall not apply to fees and dues for which the State may be liable under the general laws. When any injury or damage shall occur to any public property from flood, storm or any unavoidable cause, the estimate may be filed at once but must be approved by the Governor as provided in this article."

"Article 4351a. It shall be lawful for the Governor to approve deficiency warrants as provided for in Article 4351, Revised Civil Statutes, 1925, to any amount, the aggregate of which does not exceed Two Hundred Thousand ($200,000.00) Dollars, for all purposes for which he is permitted to approve such deficiency warrants. If any deficiency warrants are approved above this amount, such warrants are invalid and unredeemable by the State Treasurer."

Although some doubt as to the constitutionality of the above-quoted Article 4351 was cast by the concurring opinion of Judge Hawkins in Terrell v. Middleton, 108 Tex. 14, 191 S. W. 1138, we believe that its validity has subsequently been clearly established by the consistent administrative practice thereunder for over thirty years under the views of the majority of the Supreme Court that decided the Middleton case, as well as the implied sanction given the statute by the court which decided Fort Worth Cavalry

Honorable W. Lee O'Daniel - Page 4

Club, Inc. v. Sheppard, 135 Tex. 339, 83 S. W. (2) 660.
See also Conference Opinion of Attorney General Cureton
dated February 12, 1919, vol. 52, p. 20, and another
dated April 7, 1919, vol. 52, p. 299.

Whether the validity of the statutes authoriz-
ing deficiency warrants has been determined by the courts
or not, it is only necessary to construe the statutes to
demonstrate their constitutional validity.

Cardinal Manning once said, "We need not to dis-
cuss we need not to argue, we need only to define." A cor-
rect understanding of terms frequently forcloses argumenta-
tion.

The validity of Article 4351 of the statutes is
limited only by Article III, Section 49 of the Constitution.
We need, therefore, to define the words "debt", "deficien-
cies", and "casual" as there employed, since no question
of "repelling invasion", "suppressing insurrection", "de-
fending the State in war", or "paying existing debts" is
involved.

"Debt" signifies the pecuniary obligation of one
who voluntarily assumes a liability, or upon whom the law
imposes a liability. In case, as here, the State is sought
to be charged as a debtor, such debt may only be created
through some agency lawfully authorized to bind the State.

"Deficiencies", as the word is here used, pertains
expressly to "the revenue." A deficiency is a shortage or
inadequacy in a sum or fund, and the revenue contemplated is
that portion of the public moneys appropriated by the Legis-
lature to the particular purpose as to which there is claimed
to be a deficiency.

"Casual deficiencies", in this connection, means an
unforeseen and unexpected deficiency -- an insufficiency or
lack of funds to meet a situation which unexpectedly develops
and requires the immediate attention at a time when the Legis-
lature, the usual authority, is unable to act. Lewis v. Los-
ley, 19 S. E. 57; 92 Ga. 804; In re appropriations of the
General Assembly, 22 Pac. 464, 13 Colo. 316; LeFebre v. Cal-
laghan (Ariz.) 263 Pac. 589.

Obviously, Article III, Section 49 not only does not forbid, but on the contrary, necessarily authorizes the creation of a debt on behalf of the State to supply casual deficiencies of revenue, not to exceed in the aggregate at any one time $200,000.00.

The statutes (Articles 4351 and 4351a) go no further than this; they are by all the tests valid. Not all officers or agents of the State are authorized to create debts on behalf of the State, but the statute (Article 4351) is expressly limited to "all heads of departments, managers of State institutions or other persons intrusted with the power or duty of contracting for supplies, or in any manner pledging the credit of the State for any deficiency that may arise under their management or control."

Every head of a department, and every manager of a State institution, perhaps without exception, is by law clothed with the power or duty of contracting (in the manner prescribed by law) for supplies, traveling expenses, and other things necessary to the proper administration of the departmental or institutional affairs. Every such purchase or expenditure by such person does legally create a debt against the State, not only to the extent of the specific appropriation therefor, but likewise to the further extent of any casual deficiency of revenue authorized by the Legislature for such purpose.

If there exists a deficiency appropriation to meet the approved claim for a deficiency warrant, and there are funds with which to pay such warrant when drawn, there is of course no need for a further appropriation, and the warrant perforce of the statute itself will be paid. Such deficiency appropriation is itself the specific appropriation required by Article VIII, Section 6 of the Constitution. In practically every departmental or institutional appropriation there is a sum for miscellaneous or contingent expenses which has always been thought to be sufficiently specific. Opinions of the Attorney General 1922-1924 p. 123.

The constitutional purpose, therefore, is the item of maintenance, or other contingent expense, and the sum named is but the legislative estimate of the amount necessary therefor. The duty of maintenance and carrying on is imposed by the law and if the revenue appropriated to

that legitimate and necessary end proves to be insufficient, it amounts to the casual deficiency contemplated by the Constitution and statutes.

An appropriation such as we are discussing is not the same as an appropriation for a purpose which may be accomplished within the sum appropriated therefor, like a building, a betterment and the like, since in a case of that kind the building or the betterment may be brought within the specific appropriation; whereas, such things as maintenance, incidentals, including traveling expenses, postage and the like in their very nature are continuous and of daily necessity to the operation of the State's affairs,—the very functioning of the Government. In the latter case the larger purpose of the Legislature is to authorize the incurring of such maintenance and incidental expenses.

There can be no casual deficiency of revenues, such as we are considering, except with respect to those purposes for which there has been made a specific appropriation. It is obvious, therefore, that the Legislature did not intend to confer upon the Governor authority to approve the issuance of deficiency warrants to finance a project which the Legislature considered, or might have considered, during its session, and failed or refused to appropriate money for. Thus, as held in our Opinions Nos. O-632 and O-733, when the Governor approves the issuance of a deficiency warrant for the construction of a major building on the campus of a Texas educational institution, he exceeds the authority conferred by the statute, and such warrant will not support a subsequent appropriation by the Legislature, for the reason that such an expenditure is not within the category of "casual deficiencies."

It is likewise to be observed that the application to the Governor, provided for in Article 4351, is to contain an estimate of the "amount necessary to cover such deficiency until the meeting of the next Legislature." This not only makes it clear that the law was not intended to confer upon the Governor the authority to act in reference to matters which the Legislature itself had the opportunity to act upon, but also evinces a purpose to permit the Governor to approve deficiency warrants only for such amounts as are necessary to meet the emergency for the period of time between the happening of the unexpected event and the meeting of the next Legislature.

Our views with reference to the construction to be placed upon Article 4381 are aptly expressed by the Supreme Court of the State of Arizona in the case of LaFebre v. Callaghan, 283 Pac. 680, where that court, dealing with a statute of the State of Arizona somewhat similar to that involved in this opinion, held:

"Under our system of government, all power to appropriate money for public purposes or to incur any debt therefor, unless given by the constitution to some other body politic, or individual, rests in the Legislature. The executive branch has no such right, in the absence of either constitutional or statutory provisions authorizing it, and when such powers are given, either by the Constitution or act of the Legislature, they are confined to the particular case so authorized, while the power of the Legislature on such a subject, in the absence of a constitutional prohibition, is plenary. This, of course, is elemental. * * *

"It is apparent to us (that) the intent of the Legislature was that the Governor may incur liabilities and expenses only in cases where the contingency set forth in the section is unexpected and requires immediate action which the usual authority, to-wit, the Legislature, is unable to take. In other words, if, after the particular situation for which the liabilities were to be incurred arose, and before the Governor acted, the Legislature of the State, which would, of course, have full power to meet the situation by proper appropriation, were to meet in regular session, there would no longer be any necessity for him to act, and consequently no emergency of the kind contemplated by section 10, supra, since the Legislature, the ordinary source of funds for such purposes, would be able to provide the money immediately. We hold, therefore, that the power of the Governor to act * * * ceases when, after such occurrence and before his action, the Legislature meets either in regular session or in a special session authorized to act on the subject."

We deduce the following as a legal rule or formula to

govern the issuance of deficiency warrants. Where the Legislature has made a specific appropriation for a purpose and thereafter there arises a casual deficiency in the revenues thus appropriated, the Governor, upon proper application therefor by one clothed with the power to incur such indebtedness on behalf of the State, may approve a claim for a deficiency warrant to extend to the next session of the Legislature or to the beginning of the next fiscal year.

More necessity for additional revenues is never the casual deficiency that would authorize a warrant. The deficiency must have been unforeseeable when the appropriation was made. The casual deficiency may arise, however, with respect to any specific appropriation where the intention of the Legislature is to provide for a definite service, supply or project, rather than to appropriate a limited sum to be expended for a stated purpose. See State v. Haldeman, 163 S. W. 1020.

Some cases will present no difficulty whatsoever, while others will be less easy of determination, but any difficulty is usually a factual one calling for an individual consideration.

Applying these principles, we proceed to answer your questions categorically as follows:

1. The Sam Houston State Teachers College at Huntsville is not entitled to a deficiency warrant for the purpose of replacing a dormitory which has been destroyed by fire.

The rebuilding of a structure destroyed by fire stands upon precisely the same footing as the construction of a new building and such replacement does not fall within the rule we have hereinabove announced.

2. Southwest State Teachers College at San Marcos is not entitled to a deficiency warrant in the amount of $9,846.28, or in any other amount, for the purpose of constructing a steam line to the auditorium-laboratory school building recently built by a PWA grant and loan.

An examination of the Appropriation Bill passed by the 46th Legislature covering the Southwest Texas State Teachers College at San Marcos reveals that the project for which the issuance of a deficiency warrant is requested not only could have been but was considered by the Legislature,

for the Legislature provided the sum of $25,000.00 for the fiscal year August 31, 1941, for "steam pipeline including tunnels, pipe and fittings." This item of the Appropriation Bill was vetoed by your Excellency, in the exercise of the power conferred by the Constitution.

3. The warrant sought by Sul Ross Teachers College at Alpine to be used in repairing the roof of the library building at that institution is not a casual deficiency, as we have defined it above. It appears an appropriation for this specific purpose was vetoed by your Excellency in the exercise of your constitutional authority.

The appropriation to Sul Ross State Teachers College carries the following item under Improvements and Repairs: 47. General repairs and improvements....$2,000.00 for each year of the biennium. If, since the closing of the session of the Legislature there has occurred an unexpected happening or event which has made necessary immediate repairs upon the building, the deficiency warrant might be appropriately authorized since there has been a specific appropriation — Item 47 above quoted — to form the basis for the constitutional casual deficiency of revenues, but no such warrant should issue to care for needs however great of the institution existing prior to the adjournment of the Legislature.

4. Question No. 4 is based upon advice from Honorable C. E. Evans, President of Southwest Texas State Teachers College, that the request of the College for a deficiency warrant has been amended so as to seek authority to supplement Appropriation A-678, General Maintenance and Equipment, which has been exhausted, and from which payment is to be made of accounts for power, light, heat, plumbing and minor repairs on the power plant. If such appropriation has been exhausted, and, in the opinion of your Excellency, additional funds are necessary for the purposes for which such appropriation was originally available, in order to enable the institution to effectively carry on its work for the balance of the fiscal year, a deficiency warrant may be approved in the amount necessary, in your judgment, for such purpose.

Such warrant should not in any event include the cost of steam pipe line. That item is definitely out. Any such claim or estimate should, of course, be itemized.

The above and foregoing opinion represents the final views of this department after a most unusual study and many conferences, and it is thought by us to be a correct interpretation of your Excellency's powers under a sound and practical construction of the Constitution and statutes applicable.

Trusting that our answers will have been satisfactory to you, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED JUN 14, 1940

ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE